**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1451

_____

BENEVALDO DOS SANTOS-BARRO, GEANE BARRO-DA ROCHA DOS
SANTOS, GHENYFER DA ROCHA-DOS SANTOS,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency Nos. A220-324-275, A220-324-276 & A220-324-277)
Immigration Judge: Maria I. Akalski

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 13, 2026

_____

Before:  CHAGARES, *Chief Judge*, SCIRICA[*] and McKEE, *Circuit Judges*

(Filed: July 30, 2026)

_____

[*] The Honorable Anthony J. Scirica was unavailable to participate in the decision in this case after submission to the merits panel.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and 3d Cir. I.O.P. 12.1(b).

———————————

OPINION[†]

———————————

PER CURIAM

Petitioner Benevaldo dos Santos-Barro, along with his wife and minor child, petition for review of an order by the Board of Immigration Appeals ("BIA"), which dismissed their appeal from an Immigration Judge's ("IJ") order denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition.

I.

We write for the parties, so we will set forth only those facts necessary to our analysis. Santos-Barro and his family are natives of Brazil. In Brazil, Santos-Barro lived in Colatina, Espirito Santo, Brazil, a dangerous region due to drug-trafficking. Two of Santos-Barro's brothers-in-law, Samuel Goncalves and Ismael Goncalves, were involved in drug-trafficking. In February 2021, a third brother-in-law, Leandro, got into an argument in Santos-Barro's home with Samuel after discovering that Leandro had an affair with Samuel's wife. During this altercation, Samuel threw a knife towards Santos-Barro and Leandro, which hit the wall. Samuel believed that Santos-Barro was helping Leandro and threatened to kill Santos-Barro.

———————————

[†] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

2

In the same month, Santos-Barro called Brazilian police twice to report both Samuel and Ismael for drug-trafficking. Samuel found out and again threatened to kill Santos-Barro. Ismael was later arrested and held in custody for thirty days due to the police reports Santos-Barro made, leading to further threats from both brothers-in-law. These threats continued even as Santos-Barro moved his family to a town 2,000 kilometers away.

Santos-Barro, along with his wife and minor child, left Brazil in August 2021 and arrived in the United States shortly thereafter. Samuel and Ismael contacted Santos-Barro most recently in February 2022 through social media, stating they would catch him either in the United States or when he returns to Brazil.

After arriving in the United States, Santos-Barro filed applications for asylum, withholding of removal, and protection under the CAT, which an IJ denied. The IJ concluded, *inter alia*, that Santos-Barro had not demonstrated that the harm he experienced constituted persecution and that the government of Brazil was unwilling or unable to protect him. And with respect to CAT protection, the IJ concluded that the evidence did not demonstrate that it was more likely than not that Santos-Barro would be tortured in Brazil with the acquiescence of the Brazilian government. Santos-Barro appealed this decision to the BIA, which affirmed the IJ's determinations on past persecution, the availability of government protection, and relief under the CAT. Santos-Barro filed a timely petition for review.

II.[1]

We first address Santos-Barro's claims for asylum and withholding of removal before turning to relief under the CAT. As explained below, we will deny the petition for review.

A.

We first consider Santos-Barro's asylum and withholding-of-removal claims. Obtaining asylum requires an applicant to prove that he or she has a well-founded fear of persecution. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022); 8 U.S.C. § 1101(a)(42)(A). To do so, an applicant may prove that he or she has experienced "past persecution on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution." *Hernandez Garmendia*, 28 F.4th at 482. To establish past persecution, the applicant must show "(i) that he was targeted for mistreatment 'on account of one of the statutorily-protected grounds,' (ii) that the 'incident, or incidents' of mistreatment 'rise to the level of persecution,' and (iii) that the persecution was 'committed by the government or forces

---

[1] We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). When the BIA affirms the reasoning of the IJ and discusses its findings, we review both decisions. *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 202 (3d Cir. 2011). Factual findings are reviewed for substantial evidence. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021). "Under this 'extraordinarily deferential standard,' we uphold the IJ's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)). Legal issues are reviewed de novo. *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020).

4

the government is either unable or unwilling to control.'" *Doe v. Att'y Gen.*, 956 F.3d 135, 141–42 (3d Cir. 2020) (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003)).

The third element requires the applicant to do more than show "the government's inability or unwillingness to control a violent group in the abstract." *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 89 (3d Cir. 2021). Instead, "the unable-or-unwilling-to-control test evaluates the government's ability and willingness to control private actors . . . with respect to the specific applicant seeking relief." *Id.* With respect to withholding of removal, that standard "is higher than, albeit similar to, the standard for asylum" and thus, if an applicant "is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal." *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).

The IJ found that Santos-Barro did not present sufficient evidence to meet the unable-or-unwilling-to-control test. Santos-Barro's own testimony demonstrated that the police "took his report, asked details about the incidents, [and] conducted an investigation," which ultimately culminated in Ismael's arrest and detention. Joint Appendix ("JA") 8. Santos-Barro contends that this one arrest is "irrelevant" because the police took no action against Samuel and did not conduct a "proper investigation." Santos-Barro Br. 17–18. Santos-Barro testified, however, that the police confiscated both Samuel and Ismael's drugs. As the IJ found, "[t]hese details indicate . . . that the police do take action against criminal actors, such as drug dealers." JA15. We hold that the IJ's finding that Santos-Barro failed to meet the unable-or-unwilling test was supported by

5

substantial evidence. Because that determination is dispositive, we need not address Santos-Barro's other arguments concerning his claims for asylum or withholding of removal.

B.

We turn to Santos-Barro's claim for relief under the CAT. To obtain CAT protection, an applicant must prove that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). This requires an applicant to establish both (1) a clear probability of future torture and (2) that a government official would acquiesce in the torture. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).

Santos-Barro raises two challenges to the agency's CAT analysis. First, Santos-Barro takes issue with the agency's consideration that he did not suffer torture in the past. But in assessing the prospect of future torture, the IJ can consider evidence of past torture as a factor. 8 C.F.R. § 1208.16(c)(3)(i). We thus see no error. Second, Santos-Barro urges that he provided sufficient evidence of government acquiescence to his torture. The IJ found, however, that the police did take action in response to Santos-Barro's report by arresting Ismael. And we have held that "a government that investigates reports of private violence is not willfully blind to that violence." *Galeas Figueroa*, 998 F.3d at 93. Santos-Barro also asserts that "the police are cooperating with the person seeking to torture the Petitioner." Santos-Barro Br. 22. At his hearing, however, Santos-Barro provided no evidence to support this assertion beyond generalized claims about police

6

behavior.  We hold that substantial evidence supports the agency's finding that Santos-Barro did not demonstrate the Brazilian government would acquiesce to torture.

## III.

For the foregoing reasons, the petition for review will be denied.